the family resources. In Birkbeck v. Ackroyd, 74 N. Y. 356, the court said:

"The bare fact that she performs labor for third persons, for which compensation is due, does not necessarily establish that she performed it, under the act of 1860, upon her separate account. The true construction of this statute is that she may elect to labor on her own account, and thereby entitle herself to her earnings; but in the absence of such an election, or of circumstances showing that she intended to avail herself of the privilege and protection conferred by the statute, the husband's common-law right to her earnings remains unaffected."

See, also, Beau v. Kiah, 4 Hun, 171; Graf v. Feist, 9 Misc. Rep. 479, 30 N. Y. Supp. 241.

In Thuringer v. Railroad Co., 71 Hun, 526, 24 N. Y. Supp. 1087,—an action by a wife for personal injuries,—it was held that her husband was the one entitled to recover for all loss of household services occasioned by the accident, though it appeared that he had not lived with his wife for twelve years, and that she earned money by cleaning and ironing, and had used all her earnings for her own support and maintenance during that time. The court observed:

"There was no proof that she had not heard from him during the period of time covered by the separation from him, or where he was, or that he had not assisted her; nor was there any proof that there had been a dissolution of the marriage relation, or agreement that she should have her earnings separate and independent of any claim by him."

This decision illustrates the strength of the presumption of the husband's continued liability to support his wife, and of his performance of that duty, and of his consequent common-law right to her earnings. Under these authorities, the request to charge was properly refused, as inapplicable to the facts of this case.

As no error is presented by any of the exceptions taken by the defendant, the judgment must be affirmed.

Judgment affirmed, with costs. All concur.

---

### NORTON v. VERNAM et al.

(Supreme Court, Appellate Division, Second Department.   March 2, 1897.)

APPEAL FROM COUNTY COURT—REVIEW OF FACTS.

The appellate division of the supreme court, in reviewing a judgment of a county court rendered on appeal from a justice of the peace, cannot consider the weight of evidence.

Appeal from Queens county court.

Proceedings by Franklin C. Norton against Remington C. Vernam, the Arvernam Company, and James J. Findlay, for forcible entry and detainer. From a judgment of the county court affirming a final order of a justice of the peace in favor of petitioner, defendants Vernam and the Arvernam Company appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Benjamin F. Tracy, for appellants.

Jesse Johnson, for respondent.

GOODRICH, P. J.    The petition alleged:    That Norton, the petitioner, was on January 9, 1894, owner in fee, and in lawful, actual, and peaceable occupation, of a plot at Rockaway Beach, beginning at a point on the shore of the Atlantic Ocean, at the westerly line of land formerly of Eldert, now of Gleason, 658 feet westerly from the land of Scheer; running thence northerly, along the land of Gleason, to a highway leading from Rockaway to Averne; thence westerly, along the highway, 2,018 feet, to a point on the highway opposite the line of an old fence; thence southerly, along the line of said fence, parallel to the first line, to the ocean; and thence along the shore, to the place of beginning.    That on January 9, 1897, while the petitioner was in such occupation, the defendants made unlawful and forcible entry upon the premises, with a strong hand and a multitude of people, and forcibly ejected the petitioner, and held, and have since unlawfully and forcibly held, the petitioner out of the possession of the premises.    The answer denied forcible entry or detainer and the petitioner's peaceable possession, and alleged that the defendant Vernam had peaceable possession on that day.

Each party claimed title to the premises, derived through a partition made in 1809, when the lands of Cornwell were divided. A plan or map was used in that suit, but it seems either not to have been filed or to have disappeared from the records.    The petitioner has a record title to lots numbered, on that map, 10 to 15, inclusive; the defendant has a record title to lots 7 and 8, and a part of lot 6; and thus far there is no dispute, but each claims that the premises in the petition are located within the several lots to which he claims to have a record title.    A controversy thus exists between the parties as to the title and location of their respective lots, and as to the identity of such lots with those which are the subject of this proceeding, and also to the possession and acts of the parties indicating ownership and possession, and as to the forcible entry and detainer.    Upon these questions there was a large amount of evidence, but in the decision of this appeal we do not consider that which relates either to title, identity, or location, and confine ourselves to that which relates to the possession of the premises set forth in the petition, and to the forcible entry and detainer.    The justice of the peace decided that the petitioner was in possession of the premises described, and that he exercised such possession as could be had of the land, which consists of a meadow and beach, upon which latter there are no houses or structures.    There were some fences upon the premises in a more or less dilapidated condition.    The petitioner produced evidence to show that for many years he and his ancestors and grantors had been in possession of the premises described in the petition, and had been exercising acts of ownership thereof, such as letting out portions, erecting structures and fences, cutting grass, carting sand, and driving off cattle.    The defendant, on the other hand, produced evidence tending to show that he had been in possession and had exercised acts of ownership thereof, such as putting up structures and fences, letting pasturage, cutting grass and sods, and letting out parts of

the premises. There is evidence tending to show that from December 16, 1893, to January 8, 1894, the petitioner had been engaged with men and teams in grading some part of the land described in the petition, and intended to continue the work on the next day, and would have done so except for the acts of the defendant, who appeared on the premises at about 4 o'clock in the morning of January 9th, with a force of 18 men having shovels, he himself being on horseback, directing operations. The force began to repair the old fences, or to erect new ones a mile or two in length, around and across the premises, setting posts and stringing wires. Some time in the course of the forenoon, the petitioner, with a deputy sheriff, appeared on the scene with an ax, and began to cut down the fence posts. Some of Vernam's men, by his orders, threw themselves around the assailed posts, to prevent the cutting, and, in the excitement, one of them was injured by the ax. In the rush for one of the posts, Norton and one of Vernam's men came into collision, and the latter was arrested by the deputy sheriff. There were also some threats made by each party against the other. Norton was thus prevented from destroying some parts of the fence, and finally retired in good order from the scene of conflict, leaving Vernam's men at work. The justice held that the petitioner was in peaceable possession of the premises, and that the defendant had made forcible entry and detainer, and continued to forcibly hold the premises, within the statute, and, without passing upon any questions of title, gave judgment putting the petitioner in possession. From this judgment the defendant appealed to the county court. The county court affirmed the judgment, holding that the only questions to be tried were whether or not the petitioner was in peaceable possession of the premises, and whether or not the defendant had unlawfully and forcibly entered or forcibly detained the same, and that neither the title nor the right of entry nor right of possession was involved in the issue.

Section 2260 of the Code of Civil Procedure provides that an appeal from a final order to the county court, in a summary proceeding, like the present one, may be taken in the same manner and with like effect as an appeal from a judgment rendered in the court of which the judge is the presiding officer; and section 3063 provides that on such last-mentioned appeal the appellate court must render judgment according to the justice of the case without regard to technical defects or errors which do not affect the merits, and may affirm or reverse for errors of law or fact. The county court, however, cannot reverse a judgment upon a question of fact where there is conflicting evidence. In Rogers v. Ackerman, 22 Barb. 134, and in Biglow v. Sanders, Id. 147, the general term held that where, in a trial before a justice of the peace, there is conflicting evidence, the judgment cannot be reversed by the county court, although the verdict of the jury was against the weight of evidence, and that if, in such a case, the county court should reverse the judgment of the justice, its judgment of reversal would be set aside by the supreme court. Both opinions were written by Mr. Justice Paige, citing abundant authority, and were concurred in by Justices

Allen, James, and Rosekrans; and a judgment of the county court reversing the judgment of the justice of the peace was reversed, and the judgment of the justice affirmed. A similar opinion was delivered by the general term of the Second department in 1894, in the case of Campion v. Parker, 78 Hun, 234, 28 N. Y. Supp. 827, Mr. Justice Dykman saying: "It is not sufficient to justify a reversal that we would have found the facts differently. The jury is ever the absolute arbiter of the facts in cases like this, and the appellate tribunal is powerless." The same principle was declared by the appellate division of this department at the December term in two cases,—City of Brooklyn v. Brooklyn City & N. R. Co., 11 App. Div. 168, 42 N. Y. Supp. 371, Mr. Justice Cullen writing the opinion, and Ludlum v. Couch, 10 App. Div. 603, 42 N. Y. Supp. 370, Mr. Justice Bradley writing the opinion,—all the justices concurring. In the second case, Mr. Justice Bradley, in considering the wording of section 3063, held that the errors of fact for which a judgment of a justice of the peace might be reversed did not include for review questions as to the weight of evidence.

Only two questions, therefore, are open for our consideration: First. Were there errors of law at the trial? And the answer is that we find none which are prejudicial to the defendant. Second. Was there sufficient evidence to establish the peaceable possession of the premises by the petitioner on January 9, 1894, and that the defendant on that day made entry on the premises, "with a strong hand and a multitude of people," and then and thereafter held the same by force? We find sufficient evidence to sustain the decision of the justice of the peace on both branches of this second question. We express no opinion as to the title to the premises, nor as to the location of the premises as to the lots owned by the respective parties,—questions properly the subject of investigation in an ejectment suit; the affirmance being based solely upon the questions of possession, forcible entry, and holding of the premises described in the petition, and which were the scene of operations referred to at the trial.

The judgment of the county court is affirmed, with costs. All concur.

